IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Karreem Tislam Jabar Wiley, | ) | C/A No. 0:15-2262-JMC-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| Warden Larry Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Karreem Tislam Jabar Wiley, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment.  (ECF No. 29.)  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Wiley was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion.  (ECF No. 31.)  Wiley filed a response in opposition to the respondent's motion. (ECF No. 41.)  Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Wiley's Petition denied.

**BACKGROUND**

Wiley was indicted in December 2007 in Richland County for trafficking in cocaine more than one hundred grams—3rd offense (2007-GS-40-724).  (App. at 355-56, ECF No. 30-1 at 355-56.)  Wiley was represented by Tivis Colley Sutherland, IV, Esquire, and on March 20-21, 2008 was

tried by a jury and found guilty as charged.  (App. at 273-74, ECF No. 30-1 at 273-74.)  The circuit

court sentenced Wiley to twenty-five years' imprisonment.  (App. at 286-87, ECF No. 30-1 at 286-

87.)

Wiley timely appealed and was represented by Lanelle C. Durant, Esquire, of the South

Carolina Commission on Indigent Defense, who filed a brief on Wiley's behalf that raised the

following issues:

1.      Did the trial court err in not instructing the jury that the state had the burden
        of proof and the appellant had the presumption of innocence after the solicitor
        shifted the burden of proof by commenting on the fact that the appellant did
        not dispute the legality of the stop or search when the appellant did not put
        up a case at trial?

2.      Did the trial court err in not granting a mistrial when the state told the jury in
        the opening statement that the appellant was stopped because there was an
        arrest warrant out on him?

(ECF No. 30-2.)  On March 31, 2010, the South Carolina Court of Appeals affirmed Wiley's

conviction and sentence.  (State v. Wiley, 692 S.E.2d 560 (Ct. App. 2010), App. at 289-96, ECF No.

30-1 at 289-96.)  The remittitur was issued April 16, 2010.  (App. at 297, ECF No. 30-1 at 297.)

Wiley filed a *pro se* application for post-conviction relief ("PCR") on October 4, 2010 in

which he raised the following claims:

Argument 1     The Respondent has denied the Applicant right to Brady material in
               violation of the 5th Amendment.

Argument 2     Trial Counsel provided Ineffective Assistance in failing to object to
               the intercepted wire oral electronic communications used as evidence
               during trial and moving before the Court to suppress all evidence that
               stemmed from the interception as fruit of a poisonous tree.

Argument 3     Trial Counsel provided Ineffective Assistance in failing to move for
               a continuance after it was revealed to the Court during the
               suppression hearing that the evidence concerning the prior



identification of the applicant by R.C.S.D. was brand new evidence that the Respondent disclosed during testimony on the same day of the trial.

Argument 4    Trial counsel provided ineffective assistance in failing to prepare for trial by not doing a more through [*sic*] investigation into the events and circumstances of the case in it's [*sic*] totality and merely relying on the information provided by the Respondent to devise his defense.

Argument 5    Counsel was Ineffective for failing to thoroughly investigate as well as notify client that material evidence existed that would have assisted the client in making the decision whether he would plead guilty had counsel notified client that co-defendant received immunity as part of her plea agreement.

Argument 6    The Applicant also asserts the claim of prosecutorial misconduct by the Respondent.

(See Wiley v. State of South Carolina, 2010-CP-40-6889; App. at 298-346, ECF No. 30-1 at 298-346.) The State filed a return. (App. at 347-53, ECF No. 30-1 at 347-53.) On November 14, 2011, the PCR court held an evidentiary hearing at which Wiley appeared and testified and was represented by Charles T. Brooks, III, Esquire. By order filed February 24, 2012, the PCR court denied and dismissed with prejudice Wiley's PCR application. (App. at 421-31, ECF No. 30-1 at 421-31.)

On appeal, Wiley was represented by Tara Dawn Shurling, Esquire, who filed a petition for a writ of certiorari that presented the following questions:

I.    Was defense counsel ineffective in failing to advise the Applicant that statements made by him during sentencing might be used against him on appeal?

II.    Did the Petitioner's Defense Lawyer fail to provide him reasonable professional assistance of counsel when he failed to request a continuance after the State provided him with discovery information at the last possible minute before trial thereby materially changing the trial strategy developed by counsel prior to trial and leaving him inadequate time to reformulate an alternate theory of defense for the Petitioner's trial?



III.  Was Defense Counsel ineffective for failing to interview Lauren Stuckey concerning whether she was working with law enforcement at the time of the deal which led to the charges against the Petitioner where the details of her involvement with law enforcement may have provided information which would have supported the theory that the Petitioner was entrapped by Stuckey into committing an offense of a more serious nature than any crime for which he had a demonstrable predisposition to commit?

IV.  Should the Petitioner's PCR case be remanded to the lower court for further hearing and an amended order where the Order of Dismissal in this matter contains material errors of fact and specifically fails to make findings of fact and rulings of law on a significant issue addressed by the Petitioner both in his application and in the PCR testimony of Defense Counsel?

V.  Did the PCR Court err in neglecting to rule on a Brady issue clearly presented in the lower court where the Order of Dismissal indicates that the lower court's failure to make a finding on this issue was based upon a material misunderstanding of the issue raised by the Petitioner and the evidence before the Court?

VI.  Was Defense Counsel [] ineffective for failing to object to an erroneous and highly improper closing argument in which the State erroneously advised the jury that the fact that Lauren Stuckey had not been charged in the case before the Court could be had been [*sic*] at least partially explained by trial testimony which established that "she had done something. She had given information." where the record before the Court was in fact devoid of such testimony which corroborated this claim?

VII.  Was Defense Counsel ineffective for failing to refute the State's assertion that Lauren Stuckey was not charged in this matter due to the desire to protect the identity and safety of undercover officer Jason Williams by pointing out that all the other charges against Lauren Stuckey also involved deals made with Officer Jason Williams and therefore, that charging her in the case before the Court was no more likely to jeopardize this undercover officer than any of the charges they did bring?

(ECF No. 30-6.) On December 11, 2014, the South Carolina Court of Appeals issued an order denying Wiley's petition for a writ of certiorari. (ECF No. 30-9.) The remittitur was issued on January 5, 2015. (ECF No. 30-10.) This action followed.

## FEDERAL HABEAS ISSUES

Wiley's federal Petition for a writ of habeas corpus raises the following issues, quoted verbatim:

**Ground One:** The trial court erred in not granting a mistrial when the state told the jury in the opening statement that the appellant was stopped because there was an arrest warrant on him. The petitioner respectfully asserts that this was a significant error that resulted in violation of due process . . . .

**Ground Two:** Ineffective Assistance of Counsel.

1.　　The petitioner asserts that defense counsel was ineffective in failing to advise the Applicant that statements made by him during sentencing might be used against him on appeal.

2　　Petitioner's Defense Counsel failed to provide him reasonable professional assistance of counsel when he failed to request a continuance after the State revealed to Defense Counsel during a pre-trial hearing that, prior to the Petitioner's stop and search, an officer involved in the deal, Officer Damon Robertson, recognized the Petitioner from his involvement in a previous purchase from Lauren Stuckey.

3　　Defense Counsel was ineffective for failing to interview Lauren Stuckey concerning whether she was working with law enforcement at the time of the deal which led to the charges against Petitioner where the details of her involvement with law enforcement may have provided information which would have supported the theory that the Petitioner was entrapped by Stuckey into committing an offense of a more serious nature than any crime for which he had a demonstrable predispostion to commit. . . .

4　　Defense Counsel was ineffective for failing to object to an erroneous and highly improper closing argument in which the State erroneously advised the jury that the fact that Lauren Stuckey had not been charged in the case before the Court could be had been at least partially explained by trial testimony which established that "she had done something. She had given information." where the record before the Court was in fact devoid of such testimony which corroborated this claim. . . .

5.　　Defense Counsel was ineffective for failing to refute the State's assertion that Lauren Stuckey was not charged in this matter due to the desire to protect the identity and safety of undercover officer Jason Williams by pointing out that



all the other charges against Lauren Stuckey also involved deals made with Officer Jason Williams and therefore, that charging her in this case before the Court was no more likely to jeopardize this undercover officer than any of the charges they did bring.

6.  Petitioner verbatim re-argues ground/argument 5, as it is set out in his memorandum of law in support of his PCR . . . . Counsel was ineffective for failing to thoroughly investigate as well as notify the Petitioner that material existed that would have assisted the Petitioner in making the decision on whether he would seek other plea options had Counsel notified Petitioner that Co-defendant received immunity as part of her plea agreement.

7.  Trial Counsel was ineffective in failing to object to the sufficiency of the curative instruction, or move for a mistrial "after" his objection was sustained when the Court failed to instruct the jury during closing arguments that the State the burden of proof after commenting on Petitioner's failure to challenge the legality of the stop and search during cross-examination.

8.  Petitioner verbatim re-argues ground/argument 2, as it is set out in his memorandum of law in support of his PCR . . . . And as Petitioner argued during his PCR hearing . . . . PCR Appellate Counsel was ineffective in not raising this issue; when the order of dismissal had addressed this issue . . . .

**Ground Three:** Due Process/Brady Violations/Prosecutorial misconduct

1.  The PCR COURT erroneously ruled on a "Brady" issue clearly presented in the lower Court where Order of Dismissal indicates that the lower Court's failure to make a finding on this issue was based upon a material misunderstanding of the issue raised by the Petitioner and the evidence before the Court. This was an unreasonable determination of the facts by the PCR Court and in effect prejudiced the Petitioner . . . .

2.  PCR Counsel provided ineffective assistance of counsel in failing to file a 59(e) motion on this meritorious issue prejudiced the Petitioner . . . .

3.  Petitioner verbatim re-argues ground/argument #6 as it is set Out in his memorandum of law in support of his PCR application . . . .

(Pet., ECF No. 1) (record and case citations omitted).



**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g.,



Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004.  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).



"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103).  Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review.  Harrington, 562 U.S. at 101.  Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning.  See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court).  If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief.  Id.  Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court.  Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id.  Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

C.     **Exhaustion Requirements**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.**    **Respondent's Motion for Summary Judgment**

**1.**    **Claims that are Not Cognizable**

In Ground One of the Petition, Wiley argues the trial court erred in failing to grant a mistrial because of prejudicial statements made by the solicitor in his opening statement. Specifically, Wiley argues the solicitor's reference to his arrest warrants prejudiced him at trial, and such an error amounts to a violation of his right to due process. The respondent argues this issue is not cognizable in a federal habeas action. The court agrees.

A district court may only entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."). Ground One does not present a cognizable federal habeas corpus claim, even where, as here, the petitioner has attempted to couch his claim as a denial of due process. See Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000) ("In federal habeas actions, we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding."); Spencer v. Murray, 18 F.3d 237, 239-40 (4th Cir. 1994) (finding that a habeas petitioner's claim that DNA evidence was unreliable in his state criminal proceeding did not state a federal claim under § 2254(a), even construing the claim as a denial of due process). Accordingly, this issue is not cognizable in a federal habeas court, absent a showing of extraordinary circumstances, which Wiley has not demonstrated.



### 2.    Claims that are Procedurally Barred

In Ground Two of the Petition, Wiley raises several claims that trial counsel was ineffective. In Ground Three, Wiley raises claims of prosecutorial misconduct and a Brady violation. The respondent argues these claims are procedurally barred from federal habeas review because they were not properly raised in state court. The court agrees, with the exception of one ineffective assistance of counsel claim addressed below.

While most of the ineffective assistance of counsel claims raised by Wiley in Ground Two were presented to the PCR court, either in the PCR application or in testimony at the PCR hearing, or both, the PCR court only ruled on two issues of ineffective assistance of counsel in its order of dismissal—whether trial counsel was ineffective for failing to object to evidence obtained from wiretapping and whether trial counsel was ineffective in his handling of the State's refusal to disclose and late disclosure of information about a confidential informant and an undercover police officer. Wiley did not file a Rule 59(e) motion to ask the court to rule on any other claims. Therefore, as to any claims other than those ruled on by the PCR court, such claims were not preserved for appellate review in state court. See Plyler v. State, 424 S.E.2d 477, 478 (S.C. 1992) (stating issues not raised to and ruled on by the PCR court are not preserved for review on appeal); Marlar v. State, 653 S.E.2d 266, 267 (2007) (stating issues are not preserved for review where the PCR applicant fails to make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations). Also, because Wiley did not raise the ineffective assistance of counsel claim regarding wiretapping in his petition for a writ of certiorari in his PCR appeal, that claim was also not preserved for appellate review. See McCray v. State, 455 S.E.2d 686, n.1 (S.C. 1995) (stating issues not raised in a petition for a writ of certiorari from the denial of a



petitioner's PCR application are not preserved for appellate review). Consequently, these claims are procedurally barred from federal habeas review. See Lawrence, 517 F.3d at 714 ("Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules.").

However, Wiley argues he can demonstrate cause to excuse the procedural bar of the claims he raises in Ground Three concerning a Brady violation and prosecutorial misconduct. Coleman, 501 U.S. at 750. Specifically, Wiley argues PCR counsel was ineffective for failing to call certain witnesses at the PCR hearing and for failing to challenge incorrect factual findings in the PCR court's order of dismissal. (ECF No. 41 at 36.) Wiley appears to raise this claim pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012); however, the court finds such an argument to be misplaced.

In Martinez, the United States Supreme Court established a "limited qualification" to the rule in Coleman. Martinez, 132 S. Ct. at 1319. The Martinez Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of *ineffective assistance at trial*." Id. at 1315 (emphasis added). Thus, Martinez does not aid Wiley in excusing the procedural bar of claims unrelated to claims that trial counsel was ineffective. Accordingly, the court finds that Wiley has not demonstrated cause to excuse the procedural bar.

### 3.     Ineffective Assistance of Counsel

To the extent Ground Two of Wiley's Petition raises a claim that trial counsel was ineffective in his handling of the State's refusal to disclose or late disclosure of information about a confidential

PJG

informant and an undercover police officer, the court finds that such a claim is not procedurally barred, but should be denied.[1]

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in <u>Strickland</u>, that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. <u>Id.</u> at 687; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000) (stating that "the <u>Strickland</u> test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims"). To satisfy the first prong of <u>Strickland</u>, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of <u>Strickland</u>, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d)." <u>Harrington</u>, 562 U.S. at 105. The Court observed that while "'[s]urmounting <u>Strickland</u>'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of <u>Strickland</u> was

---

[1] The PCR court's order of dismissal does not clearly state which ineffective assistance of counsel claims it ruled on out of the many raised by Wiley in the PCR application. The order states that Wiley's "claim regarding an undisclosed undercover agent is without merit," which is followed by statements concerning the State's failure to reveal the details of the undercover agent's identification of Wiley, and trial counsel's impeachment of the confidential informant in his closing argument. Wiley has generally raised ineffective assistance of counsel claims in regard to these issues in Ground Two, subsections 2-6. Accordingly, to the extent Wiley challenges the PCR court's finding on these issues in Ground Two, it does not appear to be procedurally barred.



unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).  The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court.  As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief.  In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Wiley's petition. Therefore, the court turns to the question whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts.  Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

At the pre-trial hearing, counsel moved to suppress the State's evidence gathered as a result of the police's initial detention of Wiley, arguing the officers did not have reasonable suspicion to detain him.  (App. at 26, ECF No. 30-1 at 28.)  Officer Damon Robertson testified that an undercover officer arranged a drug buy with Lauren Stuckey, who described Wiley as her "partner."  (App. at



31-32, ECF No. 30-1 at 33-34.)  Officer Robertson testified he conducted surveillance during the drug buy.  (App. at 34, ECF No. 30-1 at 36.)  He testified the drug buy was supposed to take place at a K-mart, but when Stuckey arrived Officer Robertson noticed a car following her.  (Id.)  Officer Robertson testified he instructed the undercover officer to call Stuckey and change the location so that they could be sure that the other car was with Stuckey.  (Id.)  He further testified that upon the undercover officer's request, Stuckey and the other car followed to a new location to conduct the transaction.  (App. at 35, ECF No. 30-1 at 37.)   Officer Robertson stated that based on his experience, he believed that the driver of the other vehicle was involved in the drug buy.  (Id.)

Officer Robertson testified that at the new location, a fast-food restaurant parking lot, when Officer Robertson drove by the other car he was able to view the other driver's face, and based upon his previous investigations of Wiley for drug activity, he was able to identify the second driver as Wiley.  (App. at 36, ECF No. 30-1 at 38.)  Moreover, Officer Robertson testified that his previous investigations of Wiley via the undercover officer revealed that Wiley had an outstanding warrant for his arrest and was driving under a suspended license.  (Id.)  He testified that at this point, he initiated an encounter with Wiley by pulling behind his car, removing him from the car, and detaining him.  (App. at 36-37, ECF No. 30-1 at 38-39.)   Officer Robertson testified that he then asked Wiley if he had any weapons, and Wiley responded that he did not have any weapons but that he did have cocaine in his pocket.  (App. at 37, ECF No. 30-1 at 39.)  Officer Robertson testified he then arrested Wiley.  (Id.)

On cross-examination, trial counsel questioned Officer Robertson about his failure to include information about the undercover officer or Robertson's previous knowledge about Wiley in the incident reports and arrest warrant affidavit .  (App. at 43-45, 51-55; ECF No. 30-1 at 43-45, 51-55.)



Officer Robertson responded that the documents were written in a manner to protect the identity of the undercover officer. (App. at 51-52, ECF No. 30-1 at 51-52.)

The trial court ruled, without elaboration, that the officers had reasonable suspicion to stop Wiley. (App. at 66, ECF No. 30-1 at 66.) Trial counsel objected to the trial court's ruling. (App. at 68, ECF No. 30-1 at 68.) He argued that the defense was prejudiced by the State's failure to provide information about a confidential informant and the officers' prior knowledge about Wiley as a basis for reasonable suspicion. (App. at 68-79, ECF No. 30-1 at 68-79.) Specifically, he argued that his strategy at trial was to argue the officers did not have reasonable suspicion to stop Wiley, and Officer Robertson's testimony presented facts that he had never before heard, even after receiving discovery and interviewing the officers before trial. (Id.)

In response, the solicitor again extended a fifteen-year plea offer he had original offered Wiley, to cure any prejudice Wiley may have claimed from not having the information concerning the undercover officer. (App. at 88, ECF No. 30-1 at 88.) Trial counsel agreed that he and Wiley would discuss the plea offer overnight, as the trial before the jury was set to begin the next morning. (Id.) Wiley ultimately rejected the offer, even in light of the new information about the undercover officer, and decided to proceed with trial. (App. at 93, ECF No. 30-1 at 93.)

At the PCR hearing, Wiley testified that had the State disclosed the information about the undercover officer before trial, he could have prepared a better defense. (App. at 367-68, ECF No. 30-1 at 367-68.) He testified that trial counsel had prepared a defense to the initial stop based on the information they had, but the information Officer Robertson testified to in the suppression hearing changed their defense. (App. at 378, ECF No. 30-1 at 378.) Wiley testified that the information to

PJG

which Officer Robertson testified should have been provided to the defense in discovery. (App. at 386, ECF No. 30-1 at 386.)

Trial counsel testified he met with the narcotics officers involved in Wiley's case before trial and asked them for more information than he was initially provided in discovery. (App. at 388, ECF No. 30-1 at 388.) He testified that for the eighteen months that Wiley was in jail, the State slowly provided more information as trial approached, but the State still revealed new information during the suppression hearing of which trial counsel was previously unaware. (App. at 389, ECF No. 30-1 at 389.) Trial counsel testified that he repeatedly contacted the solicitor and the narcotics officers before trial to urge them to turn over any information they had not provided previously. (App. at 395, ECF No. 30-1 at 395.) He testified that if he had had the information about which Officer Robertson testified, it would have changed his outlook on the trial because his strategy before trial was to suppress the stop based on the officers' lack of reasonable suspicion, but Officer Robertson's testimony changed the facts upon which he had relied to make his argument. (App. at 395, 398-99; ECF No. 30-1 at 395, 398-99.)

The PCR court found Wiley failed to prove that trial counsel was ineffective because trial counsel objected to the State's revelation of new information about the confidential informant prior to the start of trial. (App. at 428-29; ECF No. 30-1 at 428-29.) The court finds that the PCR court's decision is not contrary to, or an unreasonable application of, clearly established federal law. Wiley has failed to show trial counsel was deficient in his performance. Trial counsel objected strenuously to the State's failure to disclose the information about the confidential informant before trial, and in so doing, he caused the State to renew a plea offer. Trial counsel also repeatedly requested information or discovery from the solicitor and narcotics officers, even as they asserted that they had



provided all of the evidence in their possession.  Wiley has failed to identify any other actions trial counsel could have taken to better handle the State's failure to disclose the information about the confidential informant.  See Strickland, 466 U.S. at 688 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."); McCarver v. Lee, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, we must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance.") (citing Strickland, 466 U.S. at 689).

Also, Wiley has failed to show he was prejudiced by trial counsel's purported errors because he has not provided any facts to show that the outcome of his trial would have been different.  See Strickland, 466 U.S. at 694.  For instance, he has failed to assert that the outcome of his trial would have been different had he been aware of the confidential informant's role in the drug buy before the trial.  Wiley's insistence at the PCR hearing that he could have prepared a better defense with this information is speculative at best.  See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on an ineffective assistance claim—or, for that matter, on any claim—a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), recognized as abrogated on other grounds Yeatts v. Angelone, 166 F.3d 255, n.4 (4th Cir. 1999); see also Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992) (stating ineffective assistance of counsel claims that are based on speculation do not meet the burden of showing prejudice under Strickland); Bruce v. Robinson, Civil Action No. 9:09-1383-PMD-BM, 2010 WL 4318871, at *8



(D.S.C. July 22, 2010) (stating a habeas petitioner's speculation, without evidence, that the outcome of his trial would have been different absent counsel's purported deficiencies, does not satisfy the prejudice prong of <u>Strickland</u>).   He also has failed to claim that he would have pled guilty instead of going to trial had he been aware of the new information.[2]  <u>See generally</u> <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1385 (2012) (providing for a remedy where trial counsel's ineffectiveness caused the defendant to reject a favorable plea offer and the ensuing trial resulted in a punishment more severe than the plea offer).  Accordingly, the court finds that the PCR court's decision is not contrary to, or an unreasonable application of, clearly established federal law.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment be granted (ECF No. 29) and Wiley's Petition be denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 19, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[2] Regardless, Wiley rejected a fifteen-year plea offer that was renewed after he learned about the confidential informant.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).